## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 22, 2006

Shirley J. Neeley, Ed.D.
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0494

Re: Whether Education Code sections 44.031 and 44.033 apply to real and personal property lease-purchase contracts authorized under Local Government Code sections 271.004 and 271.005 (RQ-0500-GA)

Dear Commissioner Neeley:

You ask about the application of Education Code sections 44.031 and 44.033, which govern procurement of school district contracts and purchases, to lease-purchase contracts for the acquisition of real and personal property authorized under Local Government Code sections 271.004 and 271.005 respectively.[1] You specifically ask the following four questions:

> 1. Are school districts required to use a method authorized by Section[] 44.031 or 44.033 [of the Texas Education Code], as applicable, to enter all or part of lease-purchase agreements under Sections 271.004 and 271.005 [of the Texas Local Government Code]?
>
> 2. If your answer to Question 1 above is "yes", must the financing agreement entered into by the district be selected pursuant to a method authorized by Section[] 44.031 or 44.033, as applicable, distinct from the underlying purchase of real or personal property?
>
> 3. May a school district enter into a lease-purchase agreement under Section 271.004 or Section 271.005 as part of a single transaction that includes the retention of a financial consultant under Section 2254.003, Government Code without utilizing the procedures required by Section 44.031 or Section 44.033?

---

[1]*See* Letter from Shirley J. Neeley, Ed.D., Commissioner of Education, Texas Education Agency, to Honorable Greg Abbott, Attorney General of Texas, at 1 (June 12, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

4. To the extent a financial consultant is contracted for under Chapter 2254, must a request for qualifications or similar competitive process be used to select the provider? Does the selection and negotiation procedure in Section 2254.004 apply to contracting with a financial consultant?

Request Letter, *supra* note 1, at 2–3 (footnote omitted).

## I. Statutory Background

### A. Education Code sections 44.031 and 44.033

Chapter 44, subchapter B of the Education Code governs school district contracts and purchases. *See* TEX. EDUC. CODE ANN. §§ 44.031–.044 (Vernon 2006). Section 44.031 of the Education Code generally requires a school district to make each contract valued at $25,000 or more by a method, of the ten methods listed, that provides the best value:

> Except as provided by this subchapter, *all school district contracts*, except contracts for the purchase of produce or vehicle fuel, valued at $25,000 or more in the aggregate for each 12-month period *shall be made by the method, of the following methods*, that provides the best value for the district:
>
> (1)  competitive bidding;
>
> (2)  competitive sealed proposals;
>
> (3)  a request for proposals, for services other than construction services;
>
> (4)  a catalogue purchase as provided by Subchapter B, Chapter 2157, Government Code;
>
> (5)  an interlocal contract;
>
> (6)  a design/build contract;
>
> (7)  a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager;
>
> (8)  a job order contract for the minor construction, repair, rehabilitation, or alteration of a facility;
>
> (9)  the reverse auction procedure as defined by Section 2155.062(d), Government Code; or

> (10) the formation of a political subdivision corporation under Section 304.001, Local Government Code.

*Id.* § 44.031(a) (emphasis added) (footnote omitted). In addition to contracts to purchase produce or vehicle fuel, the statute expressly excepts from its application contracts for professional services; computers and related equipment acquired through the Building and Procurement Commission; and items available only from a single source. *See id.* § 44.031(a), (f), (i)–(j). It also excepts contracts to replace or repair equipment and school facilities in certain emergency situations. *See id.* § 44.031(h).

Section 44.031 requires a school district to select the method that provides best value and to then comply with the procedures applicable to that purchasing method. *See id.* § 44.031(a); *Daniels Bldg. & Constr., Inc. v. Silsbee Indep. Sch. Dist.*, 990 S.W.2d 947, 949–50 (Tex. App.—Beaumont 1999, pet. dism'd); *see also* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 2–3. Subsequent provisions in section 44.031 and subchapter B set forth procurement procedures and vendor selection criteria applicable to particular listed methods.[2] Section 44.031(e) provides that "[t]o the extent of any conflict, this subchapter prevails over any other law relating to the purchasing of goods and services except a law relating to contracting with historically underutilized businesses." TEX. EDUC. CODE ANN. § 44.031(e) (Vernon 2006).

Section 44.033 applies to personal property purchases of less than $25,000. *See id.* § 44.033(a). It requires a school district to purchase personal property, if its "value . . . is at least $10,000 but less than $25,000, in the aggregate, for a 12-month period," through a "vendor list" created by the district for categories of personal property. *Id.* § 44.033(a)–(b). Before making a purchase, a school district must obtain quotes from vendors on the list, and "the purchase shall be made from the lowest responsible bidder." *Id.* § 44.033(c). "In the alternative, the school district may purchase those items in accordance with Section[] 44.031(a) [competitive bidding] and (b) [competitive sealed proposals]." *Id.* § 44.033(a).

## B.    Public Property Finance Act

Chapter 271, subchapter A of the Local Government Code, the Public Property Finance Act (the "Act"), furnishes "governmental agencies with a feasible means to purchase or otherwise acquire, use, and finance public property." TEX. LOC. GOV'T CODE ANN. §§ 271.001, .002(b) (Vernon 2005). The Act authorizes contracts, including lease-purchase contracts, to acquire personal and real property. *See id.* §§ 271.004–.005. Section 271.004, which applies solely to school districts, authorizes a school district to "execute, perform, and make payments under a contract under this Act for the use or purchase or other acquisition of *real property or an improvement to real*

---

[2]*See* TEX. EDUC. CODE ANN. §§ 44.031(g) (Vernon 2006) (publication of notice for bids and proposals), 44.035 (evaluation of construction service bids and proposals), 44.036 (facility design-build contracts), 44.037 (construction manager-agent contracts), 44.038 (construction manager-at-risk contracts), 44.039 (selecting construction services contractor through sealed proposals), 44.040 (selecting construction services through bids), 44.041(facility job order contracts).

*property.*" *Id.* § 271.004(a) (emphasis added).[3] A real property contract in the form of a lease-purchase contract must be submitted to and approved by the attorney general. *See id.* § 271.004(g).

Section 271.005 authorizes governmental agencies generally, which by definition include a school district, to "execute, perform, and make payments under a contract . . . for the use or the purchase or other acquisition of any *personal property,* or the financing thereof." *Id.* § 271.005(a) (emphasis added); *see also id.* § 271.003(4) ("'Governmental agency' means a municipality, county, school district, conservation and reclamation district, hospital organization, or other political subdivision of this state."). The personal property contract may be in the form of a lease, a lease-purchase, an installment purchase, "or any other form considered appropriate by the governing body including . . . an instrument which would be required to be approved by the attorney general under Chapter 1202, Government Code." *Id.* § 271.005(a)(2); *see also* TEX. GOV'T CODE ANN. § 1202.003(a) (Vernon 2000) (requiring issuers to submit public securities for attorney general approval before the securities are issued).

You do not ask about a particular lease-purchase contract. Lease-purchase contracts generally enable the purchaser of the property to spread the purchase price over a number of years, while receiving immediate use of the purchased property. Tex. Att'y Gen. Op. No. JM-697 (1987) at 1; *see also* ASSOCIATION FOR GOVERNMENTAL LEASING & FINANCE, AN INTRODUCTION TO MUNICIPAL LEASE FINANCING: ANSWERS TO FREQUENTLY ASKED QUESTIONS, at 3 (July 1, 2000), *available at* http://www.aglf.org/downloads/Municipal_Lease_Financing.pdf (last visited Dec. 20, 2006) ("In a 'financing' lease, the lessee enjoys the benefits and bears the burdens of ownership of the leased property . . . . In effect, the lease payments represent the lessee's installment purchase of the leased property over time.") [hereinafter MUNICIPAL LEASE FINANCING]. In a typical lease-purchase contract involving a school district, the lessor extends funds or credit to acquire the property, and the school district as the lessee repays that amount by making fixed installment payments over the term of the agreement. *See, e.g., Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 549 (Tex. 2000) (describing a school district lease-purchase agreement executed under the Act for the construction of a high school building). Under such an arrangement, a school district may execute separate and additional contracts with other vendors for the actual construction or improvement of the property subject to the provisions of the lease-purchase contracts. *See id.;* Tex. Att'y Gen. Op. No. JM-800 (1987) at 1 (describing a proposed county lease-purchase agreement for construction of a county jail under the Act).

---

[3]Before executing such a contract, the district must publish notice of its intent to enter into the contract at least sixty days before the date set for execution of the contract. TEX. LOC. GOV'T CODE ANN. § 271.004(a) (Vernon 2005). If within the sixty days the district receives a petition signed by at least five percent of the district's registered voters, the district may not "approve the contract or publish the first advertisement for bids for construction of improvements" unless the contract is approved by a majority of the voters at a referendum called for that purpose. *Id.* § 271.004(b).

## II.      Analysis

### A.      Application of Education Code sections 44.031 and 44.033 to lease-purchase contracts

Your first two questions essentially ask whether Education Code sections 44.031 and 44.033 apply to school district lease-purchase contracts authorized under the Act. *See* Request Letter, *supra* note 1, at 2. You suggest that prior attorney general opinions, particularly Attorney General Opinion JC-0492, indicate that sections 44.031 and 44.033 apply. *See id.*

In Attorney General Opinion JC-0492, this office determined, based on the language of section 44.031, that a school district was not authorized to participate in a political subdivision corporation created under Local Government Code section 304.001 to purchase electricity with an aggregate value of $25,000 or more. *See* Tex. Att'y Gen. Op. No. JC-0492 (2002) at 5; *see also* Tex. Att'y Gen. Op. Nos. JC-0205 (2000) at 6 (concluding that because use of a designated broker of record is not authorized by sections 44.031 and 44.033, a junior college district may not use such method to purchase insurance contracts), DM-418 (1996) at 13 (stating that a school district must award contracts for items other than produce, professional services, or vehicle fuel in accordance with sections 44.031 and 44.033). The opinion relied on the following factors: First, section 44.031 at that time did not expressly include participation by a school district in a political subdivision corporation as an available purchasing method.[4] *See* Tex. Att'y Gen. Op. No. JC-0492 (2002) at 5. Second, the school district's participation in a political subdivision corporation did not fit within any of the nine contract types expressly listed in the statute at that time. *Id.* Finally, the opinion concluded, "a school district may not use a purchasing method provided by a statute outside of the Education Code that is not expressly listed or included within those methods listed in section 44.031 unless the [other] statute explicitly permits the school districts to do so." *Id.* at 6. Local Government Code section 304.001, which did not expressly include school districts within its definition of the term "political subdivision," did not explicitly authorize a school district to participate in a political subdivision corporation to purchase electricity. *See id.* at 7.

Section 44.031 does not expressly include lease-purchase contracts as one of the authorized methods. Nor do such lease-purchase contracts fit within one of the ten methods expressly listed. But unlike the statute addressed by Attorney General Opinion JC-0492, the Act expressly authorizes school districts to enter into lease-purchase contracts to acquire personal and real property. *Compare id.* (noting that the political subdivision corporation statute did not include school districts within the definition of "political subdivision"), *with* TEX. LOC. GOV'T CODE ANN. § 271.003(4) (Vernon 2005) (including school districts within the definition of "governmental agency"), *and id.* § 271.004 (authorizing school districts to execute lease-purchase contracts for real property). Consequently, the question here is not whether a school district may execute lease-purchase contracts, but "whether the competitive procedures under sections 44.031 and 44.033 must be used to enter into agreements

---

[4]In 2003, the legislature amended section 44.031 to add subsection (a)(10), authorizing the formation of a political subdivision corporation as a permissible purchase method. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 201, § 38, 2003 Tex. Gen. Laws 812, 823.

under [s]ections 271.004 and 271.005." Request Letter, *supra* note 1, at 2 n.6. No Texas court or attorney general opinion has addressed this question.

Section 44.031 by its terms applies to all school district contracts valued at $25,000 or more other than those specifically excepted, and it requires that all contracts subject to the statute be made by the authorized method that provides the best value. *See* TEX. EDUC. CODE ANN. § 44.031(a), (c), (e) (Vernon 2006); *Daniels Bldg. & Constr., Inc.*, 990 S.W.2d at 949–50; *see also* Tex. Att'y Gen. Op. No. JC-0492 (2002) at 6 (stating that section 44.031 provides an exclusive list of permissible purchasing methods for contracts over a certain value). Additionally, section 44.031 by its terms is not limited to personal property. *See* TEX. EDUC. CODE ANN. § 44.031 (Vernon 2006); *see also id.* § 44.031(a)(6), (8) (providing for construction and facility contracts). In contrast, section 44.033 by its terms is limited to personal property purchases valued between $10,000 and $25,000 and requires that such purchases be made in accordance with its vendor list method or the competitive bid and competitive sealed proposal methods provided by section 44.031(a) and (b). *See id.* § 44.033(a); *see also* Tex. Att'y Gen. Op. No. JC-0205 (2000) at 6 (stating that "[s]ection 44.031 and its sister statute, section 44.033, establish a list of permissible purchasing methods for contracts over a certain aggregate yearly value"). Sections 44.031 and 44.033 do not except from their application lease-purchase contracts for personal and real property entered under the Act. *See Unigard Security Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply.").

The Act by its terms authorizes school district contracts, including lease-purchase contracts, for the purchase or acquisition of personal and real property. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.004,–.005 (Vernon 2005); *see also id.* § 271.003(2) ("'Contract' means an agreement entered into under this subchapter but does not mean a contract solely for the construction of improvements to real property."). But the Act does not address how a school district must award lease-purchase contracts or select the lessor or seller of the property. *See* M. DAVID GELFAND, STATE AND LOCAL GOVERNMENT DEBT FINANCING 49 (2000) ("The lessor may be the manufacturer of the property, a vendor, a real estate developer, or a lease broker.").[5] Furthermore, it does not expressly except lease-purchase contracts from Education Code sections 44.031 and 44.033. *See* TEX. EDUC. CODE ANN. § 44.031(e) (Vernon 2006) (stating that chapter 44, subchapter B prevails over any other law relating to purchases of goods and services); Tex. Att'y Gen. Op. No. JC-0492 (2002) at 6 (stating that in light of section 44.031(e), any exceptions to section 44.031 must be express). Section 271.006, in fact, suggests that the legislature intended governmental agencies to comply with the procurement procedures generally applicable to them in entering into the contracts authorized by the Act. *See* TEX. LOC. GOV'T CODE ANN. § 271.006 (Vernon 2005). Section 271.006 provides that "[i]n entering into *the contract*, a municipality must comply with the requirements of Chapter 252

---

[5]The lessor may also be a public facility corporation created by a school district to specifically acquire a "public facility" for the sole purpose of leasing or conveying it to the school district pursuant to the Public Facility Corporation Act (the "Facility Act"). *See* TEX. LOC. GOV'T CODE ANN. §§ 303.003(11), .023, .041 (Vernon 2005). You do not ask and we do not consider whether Education Code sections 44.031 and 44.033 would apply to a lease-purchase contract between a school district and its public facility corporation constituting a "sponsor obligation" under the Facility Act. *See id.* §§ 303.003(12) (defining "sponsor obligation"), 303.072 (providing that bonds issued by a public facility corporation are payable from facility revenues or sponsor obligations).

[Purchasing and Contracting Authority of Municipalities] and a county must comply with the requirements of Subchapter C, Chapter 262 [Purchasing and Contracting Authority of Counties; Competitive Bidding in General]."[6] *Id.* § 271.006(a) (emphasis added); *see also id.* §§ 271.003(2) (defining "contract"), 271.0065 (providing additional procedures for "any procedure for competitive bidding under this subchapter"). Thus, no provision in the Act expressly prohibits the application of the procurement methods of Education Code sections 44.031 and 44.033 to lease-purchase contracts or is inconsistent with such application. *See In re Jane Doe*, 19 S.W.3d 249, 255 (Tex. 2000) ("Our focus in construing this statute is to determine the Legislature's intent; this we discern primarily from the plain meaning of the words chosen.").

Finally, no inherent feature or characteristic of lease-purchase contracts precludes awarding such contracts using a section 44.031 or 44.033 method. *See, e.g.*, M. DAVID GELFAND, STATE AND LOCAL GOVERNMENT DEBT FINANCING 28 (2000) ("In some jurisdictions, the lease-purchase contract itself must be competitively bid or waiver or exemption obtained."); MUNICIPAL LEASE FINANCING, at 24, *supra* p. 4 ("Certain state statutes would also require that the lease itself should be publicly bid as part of the acquisition of the property to be leased.").

A brief submitted on behalf of Shiner Independent School District appears to contend that lease-purchase contracts under the Act are not subject to sections 44.031 and 44.033 because they are financing contracts or because they are public securities rather than purchase contracts.[7] While the brief does not articulate it, we presume that the legal argument underlying this contention is that extension of credit or issuance of securities is not "property" to which sections 44.031 and 44.033 apply.

First, while lease-purchase contracts may be financing contracts, they are nonetheless, by definition, contracts for the purchase or acquisition of property. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.004,–.005 (Vernon 2005); *see also Spur Indep. Sch. Dist. v. W.A. Holt Co.*, 88 S.W.2d 1071, 1073 (Tex. Civ. App.—Waco 1935, no writ) (stating that "purchase" is the "transmission of property from one person to another by voluntary act and agreement, founded on a valuable consideration"). The financing arranged with the lessor or creditor is simply the means of purchasing the property that is the subject of the lease-purchase contract. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 549 (describing school district lease-purchase transaction to acquire school building); *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex. 1982) (describing installment sale agreement with extension of credit as a single transaction for the purchase of a truck rather than simply an extension of credit or borrowing of money under the Deceptive Trade Practice Act).

---

[6] When the Act was adopted, only cities and counties were subject to the competitive bid requirements of the source law (former article 2368a, Vernon's Texas Civil Statutes). *See* TEX. LOC. GOV'T CODE ANN. § 271.006 revisor's note (Vernon 2005); Public Property Finance Act, 66th Leg., R.S., ch. 749, § 5, 1979 Tex. Gen. Laws 1839, 1841 ("Each governmental agency currently subject thereto shall comply with the terms of . . . (Article 2368a, Vernon's Texas Civil Statutes), in entering into contracts, including the requirement that certain contracts be awarded pursuant to public bids . . . .").

[7] *See* Brief from George E. Grimes, Jr., Walsh, Anderson, Brown, Schulze & Aldridge, P.C., on behalf of Shiner Independent School District, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General of Texas (Aug. 4, 2006) [hereinafter Shiner ISD Brief].

Second, lease-purchase contracts as provided for under sections 271.004 and 271.005 of the Act are not described as, nor are they, public securities as a matter of law. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.004–.005 (Vernon 2005). *Compare id., with id.* §§ 271.050 (stating that certificates of obligations are subject to Government Code provisions dealing with "public securities"), 271.053 (stating that certificates of obligation "are 'security' within the meaning of Chapter 8, Business & Commerce Code"). A section 271.005 contract for the acquisition of personal property may be in the form of "an instrument which would be required to be approved by the attorney general under Chapter 1202, Government Code," i.e., a public security, but is not required to be in that form. *Id.* § 271.005(a)(2); *see also* TEX. GOV'T CODE ANN. § 1202.003(a) (Vernon 2000) (requiring governmental issuers to submit public securities for review and approval by the attorney general). That a personal property lease-purchase contract is not, as a matter of law, in that form is evidenced by the fact that it is not otherwise required to be submitted to the attorney general for approval. *See* TEX. LOC. GOV'T CODE ANN. § 271.007 (Vernon 2005) (providing that a governing body *may* submit a contract providing for the payment of $100,000 or more). As the brief notes, section 271.004(g) specifically requires a real property lease-purchase contract to be submitted to the attorney general for review and approval. *See id.* § 271.004(g); Shiner ISD Brief, *supra* note 7, at 5. That requirement, however, does not support the brief's contention that the contract is a public security. If section 271.004 did not specifically require it, real property lease-purchase contracts, like the personal property lease-purchase contracts, would not be subject to such approval under Government Code chapter 1202 because they would generally not meet the definition of public security. *See* TEX. GOV'T CODE ANN. §§ 1202.001(3) (Vernon Supp. 2006), .003(a) (Vernon 2000).

Chapter 1202 of the Government Code generally requires attorney general approval of public securities issued by or on behalf of governmental entities. *See id.* § 1202.001(2) (Vernon Supp. 2006) (defining "issuer"); *id.* § 1202.003(a) (Vernon 2000) (requiring issuers to submit public securities for review and approval). Section 1202.001(3) defines "public security," consistently with the established definition of the term "security," as follows:

> "Public security" means an instrument, including a bond, note, certificate of obligation, certificate of participation or other instrument evidencing *a proportionate interest in payments due to be paid by an issuer*, or *other type of obligation that*:
>
> (A) is issued[8] or incurred by an issuer under the issuer's borrowing power, without regard to whether it is subject to annual appropriation; and
>
> (B) is represented by an *instrument issued in bearer or registered form* or is not represented by an instrument *but the transfer of which is registered on books maintained* for that purpose by or on behalf of the issuer.

---

[8]*See* TEX. GOV'T CODE ANN. § 1202.001(1) (Vernon Supp. 2006) ("'Issuance' means the initial delivery by an issuer of evidence of an obligation of a public security issued by the issuer to the initial purchaser in exchange for the purchase price of the public security.").

*Id.* § 1202.001(3) (emphasis and footnote added); *see also* TEX. BUS. & COMM. CODE ANN. § 8.102 (15) (Vernon Supp. 2006) (defining "security"); *id.* § 8.102 cmt. 15 (Vernon 2002) (summarizing and explaining the section 8.102(15) definition of "security" as an interest or participation that is (i) fully transferable because the issuer maintains transfer books or it is in registered or bearer form; (ii) one of a class or series rather than an individual contractual obligation; and (iii) of a type dealt in or traded on securities markets or exchanges, or is a medium of investment specifically governed by article 8 of the Business and Commerce Code, Uniform Commercial Code-Investment Securities).

A lease-purchase contract, unlike a bond, note, certificate of obligation, certificate of participation, or similar instrument, does not represent a proportionate interest in the payments to be paid by the school district. *See, e.g.,* LEASE PURCHASE AGREEMENT, BETWEEN AIG COMMERCIAL EQUIPMENT FINANCE, INC. AND SHINER INDEPENDENT SCHOOL DISTRICT (July 1, 2005).[9] Nor is such contract "issued" in bearer or registered form or fully transferable. *See, e.g., id.* While the lease-purchase contract may serve as the underlying source of payment for securities—bonds or certificates of participation[10]—that may be issued and sold to obtain the funds necessary to acquire the property, the contract itself is not such a security. *See* TEX. GOV'T CODE ANN. § 1202.001(3) (Vernon Supp. 2006); TEX. BUS. & COMM. CODE ANN. § 8.102(15) (Vernon Supp. 2006); *see also* M. DAVID GELFAND, STATE AND LOCAL GOVERNMENT DEBT FINANCING, at 50–51 (2000) (stating that while certificates of participation in governmental lease-purchase agreements have been deemed "municipal securities" under federal securities law, "[a] series of SEC no-action letters . . . suggest that single investor municipal lease financings will not constitute a 'security'").

In answer to your first and second questions, we conclude that because Education Code sections 44.031 and 44.033 apply to all school district purchase contracts other than those specifically excepted and because the Act does not state that sections 44.031 and 44.033 do not apply, the two statutes apply to school district lease-purchase contracts entered under Local Government Code sections 271.004 and 271.005.

## B.    Procedures applicable to financial consultant services contract

In your fourth question, you ask whether under Government Code chapter 2254 a financial consultant must be selected pursuant to a request for qualification or similar competitive process and whether the section 2254.004 selection and negotiation procedures apply to such selection. *See* Request Letter, *supra* note 1, at 3.

---

[9]*See* attachment to Request Letter, *supra* note 1 (Exhibit C).

[10]*See Tex. Dep't of Corrections v. Anderson County Appraisal Dist.,* 834 S.W.2d 130, 130–31 (Tex. App.—Tyler 1992, writ denied) (describing certificates of participation issued by a trustee bank and secured by the lease-purchase contract payments assigned to the trustee by the lessor); *In re Anzai,* 936 P.2d 637, 639 n.3 (Haw. 1997) (describing lease-purchase transaction and certificates of participation issued by a trustee evidencing proportionate interests in the rental payments under the lease); MUNICIPAL LEASE FINANCING, at 13–15, *supra* p. 4 (discussing the structure of certificates of participation and lease revenue bonds secured by financing leases).

Section 44.031(f) provides that "[t]his section does not apply to a contract for professional services rendered, including services of an architect, attorney, or fiscal agent." TEX. EDUC. CODE ANN. § 44.031(f) (Vernon 2006). The statute, however, proceeds to expressly address the services of a financial consultant: "A school district may, at its option, contract for professional services rendered by a financial consultant or a technology consultant in the manner provided by Section 2254.003, Government Code [Professional Services Procurement Act], in lieu of the methods provided by this section." *Id.* In other words, in selecting a financial consultant, a school district may choose to comply with either section 44.031(a) or Government Code section 2254.003.

The Professional Services Procurement Act, chapter 2254, subchapter A of the Government Code (the "Professional Services Act"), prohibits a governmental entity from selecting a provider of professional services or awarding a contract for professional services on the basis of competitive bids. *See* TEX. GOV'T CODE ANN. § 2254.003 (Vernon 2000); *see also id.* § 2254.002(2) (defining "professional services"). Section 2254.003 requires that such professional service providers be selected and the contracts for such services be awarded "on the basis of demonstrated competence and qualifications to perform the services" and "for a fair and reasonable price." *Id.* § 2254.003(a)(1)–(2). Section 2254.003 does not mandate any particular selection process. Section 2254.004 sets forth additional procedures that a governmental entity must follow in procuring three of the nine expressly listed types of professional services: architectural, engineering, or land surveying services. *See id.* §§ 2254.002(2), .004(a). The governmental entity must select the most highly qualified service provider and then attempt to negotiate with that provider a fair and reasonably priced contract. *Id.* § 2254.004(a)(1)–(2). If a satisfactory contract cannot be negotiated with the most highly qualified provider, the governmental entity must terminate negotiations with that provider and select and negotiate with the next most highly qualified provider. *See id.* § 2254.004(b)(1)–(3). The governmental entity must repeat the process "until a contract is entered into." *Id.* § 2254.004(c).

In answer to your fourth question, we conclude that Education Code section 44.031 permits a school district to contract for financial consultant services pursuant to the Professional Services Act. Under the Professional Services Act, a financial consultant may, but is not required to, be selected through a request for qualifications or similar competitive process. We note that the most reasonable way to assure that such service providers are selected on the basis of demonstrated competence and qualification to perform the services, as the statute mandates, is through a request for qualifications or similar competitive process. Additionally, because the negotiation procedure of section 2254.004 of the Professional Services Act applies only to architectural, engineering, or land surveying services, those procedures are not required when contracting with a financial consultant.

## C.   Application of sections 44.031 and 44.033 to lease-purchase contracts that include financial consultant services

In your third question, you ask whether a school district may enter into a lease-purchase agreement under the Act that includes the services of a financial consultant retained under Government Code section 2254.003 without complying with Education Code sections 44.031 or 44.033. *See* Request Letter, *supra* note 1, at 3.

We assume that your question is premised on the conclusion of a 1990 attorney general opinion. In Attorney General Opinion JM-1189, this office construed the statutory predecessor to the Professional Services Act to prohibit a governmental entity from awarding a design-build contract on the basis of competitive bids because professional services would comprise a component of the contract. *See* Tex. Att'y Gen. Op. No. JM-1189 (1990) at 3–4. Attorney General Opinion JM-1189, however, does not address the authority for such contracts, nor does it address sections 44.031 or 44.033, or the Act.

The Act authorizes lease-purchase contracts for the use, purchase, or other acquisition of real and personal property. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.002, .004(a), .005(a) (Vernon 2005); *see also id.* § 271.005(c) (authorizing contracts for the materials and labor incident to the installation of personal property). Because financial consultant services are neither real nor personal property, the Act does not authorize lease-purchase contracts for acquiring financial consultant services. *See id.* §§ 271.004–.005. Thus, a school district is not authorized to combine the services of a financial consultant with the acquisition of property under a lease-purchase contract entered under the Act. Second, even if financial consultant services were authorized to be combined with the acquisition of property under a lease-purchase contract, it is unclear how this would allow such a contract to be procured under the Professional Services Act. On the one hand, the Professional Services Act does not apply to contracts for the acquisition of property. *See* TEX. GOV'T CODE ANN. §§ 2254.002–.003 (Vernon 2000). On the other hand, sections 44.031 and 44.033 specifically do apply to such property contracts. *See* TEX. EDUC. CODE ANN. §§ 44.031, .033 (Vernon 2006); *see also supra* p. 9. Moreover, the Education Code provisions prevail over conflicting procurement provisions. *See id.* § 44.031(e). Finally, Attorney General Opinion JM-1189 is premised on the Professional Services Act's prohibition against selecting providers of professional services subject to the statute on the basis of competitive bids. *See* Tex. Att'y Gen. Op. No. JM-1189 (1990) at 2–3. However, this prohibition does not apply here because a school district may contract for financial consultant services using one of the methods authorized under Education Code section 44.033(a), including competitive bidding. *See* TEX. EDUC. CODE ANN. § 44.031(a), (e)–(f) (Vernon 2006); *see also supra* p. 10. Thus, Attorney General Opinion JM-1189 is inapplicable. Accordingly, we conclude that a school district is not authorized to enter into a lease-purchase contract under the Act that includes the services of a financial consultant without complying with Education Code section 44.031 or 44.033.

## S U M M A R Y

Education Code sections 44.031 and 44.033 apply to school district lease-purchase contracts entered under Local Government Code sections 271.004 and 271.005.

Section 44.031 of the Education Code allows a school district to contract for financial consultant services pursuant to chapter 2254, subchapter A of the Government Code, which permits but does not require a financial consultant to be selected through a request for qualifications or similar competitive process. Additionally, the negotiation procedures of Government Code section 2254.004 do not apply to contracting with a financial consultant. A school district would not avoid the applicability of section 44.031 or 44.033 of the Education Code to a lease-purchase contract under Local Government Code section 271.004 or 271.005 by including the services of a financial consultant in the contract.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee